**UNITED STATES of America,**
**Plaintiff,**

v.

**Angelo CHIEPPA et al., Defendants.**

United States District Court
S. D. New York,

Nov. 28, 1956.

John Cye Cheasty, New York City, for defendant Indian Hill Farm, Inc., for the motion.

Paul W. Williams, U. S. Atty., and Robert Kirtland, Asst. U. S. Atty., New York City, opposed.

HOLTZOFF, District Judge.

Several of the defendants were convicted on charges of conspiracy and various violations of the laws relating to taxes on alcohol. One of them, Indian Hill Farm, Inc., against whom fines and penalties aggregating $22,500 were imposed, moves for a reduction of sentence. The application, which is addressed to the discretion of the court, is governed by Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., empowering the court to reduce a sentence at any time *within sixty days after its imposition.* This motion was filed within the permitted period.

This case involves the construction and operation of a big illicit distillery on a farm known as Indian Hill Farm, located in a rural section of Orange County, New York. The evidence tended to show that the total capacity of the distillery was approximately 32,000 gallons, and that the daily production capacity was over 1,000 gallons of 180 proof alcohol. Gov-

ernment counsel contends that taxes that should have been paid to the Government in connection with this undertaking amounted to about $19,000 daily. It seems fantastic that anyone might have contemplated that continuous activities in connection with such a large distillery could remain undetected for a considerable time. Yet this vain hope evidently sprang in the breasts of the rogues who carried on this nefarious venture. Their expectations were shattered, however, shortly after the enterprise got under way. While in full operation the still was raided by Agents of the Treasury Department with the assistance of New York State Troopers. The miscreants were arrested on the spot *in flagrante delicto,* indicted and brought to trial.

Before referring to the pertinent proceedings at the trial, it seems desirable to call attention to a few of the salient features of this conspiracy. The evidence tends to show the following facts. The idea of producing and selling illicit liquor on a large scale on Indian Hill Farm, seems to have originated in the brain of Michael Clemens, who apparently was the real and sole owner of the farm, and was living on it with his wife. He took title to it, however, in the name of a corporation evidently organized only for that purpose, known as Indian Hill Farm, Inc. Both Michael Clemens, who may be deemed to have been the principal offender, and the corporation were named as defendants in the indictment. Clemens died prior to the trial. After conceiving the criminal enterprise, Clemens undertook negotiations with the defendant Ivicola with a view to the construction and operation of the still. Ivicola brought a steam shovel to the farm. Acting under the general and constant supervision of Clemens, Ivicola, with the assistance of the defendant Chieppa commenced excavations and followed by erecting a distillery. Since the construction involved many ramifications, including a considerable amount of skilled metal work, a number of the other persons also named as defendants contributed labor of different types to the construction

of the complicated structure. Many of the participants had unsavory criminal backgrounds. Finally the construction of the distillery was completed and it began to operate at full blast. Apparently, however, the operations had not continued for more than a very short time before the raid took place on August 18, 1953.

The indictment in this case consists of five counts. The first count charges conspiracy to violate certain provisions of law relating to taxes on alcohol. Each of the remaining counts charges a substantive offense, in each instance a specific violation of one of the laws relating to taxes on alcohol. Count 2 charges certain defendants with carrying on the business of a distiller without having given the required bond. Count 3 charges failure to register the still as required by law. Count 4 charges making and fermenting mash fit for distillation on premises other than an authorized distillery. Count 5 charges the possession of distilled spirits without affixing stamps to the containers. Not all of the defendants are named in each of the counts. Indian Hill Farm, Inc., however, is charged in each of them.

The evidence of the large scale illicit activities was ample. In fact, it may be called overwhelming. At the close of the Government's case, however, the court directed the entry of a judgment of acquittal as to the defendant Jean Clemens, the widow of Michael Clemens. While the evidence fully warranted the inference that she knew of the machinations of her husband and his co-conspirators and even was present at some of their negotiations and conferences, there was no affirmative proof that she aided or encouraged the illegal enterprise by word or deed. It was the view of the court that although the common-law rule that a wife cannot conspire with her husband was no longer in effect, nevertheless, since a wife has a right to be with her husband, her mere presence at his illicit activities and her knowledge of their purport, were not alone sufficient to

justify her conviction either as a conspirator or as an aider and abettor.

None of the remaining defendants took the witness stand. The jury found all of them guilty on all of the counts in which they were charged. The court sentenced defendants Ivicola and Chieppa to imprisonment for a term of two years in addition to imposing fines. Some of the other defendants were sentenced to terms of imprisonment, two were placed on probation, and two were fined. Since a corporation cannot be subjected to any punishment other than a fine, the court imposed a maximum fine on each count as against defendant Indian Hill Farm, Inc., the fines aggregating $22,-500.

Whether the motion to reduce the fines should be granted depends upon the equities of the general situation. Counsel for the defendant argues that actually the separate counts represent various aspects of the same series of transactions, all of which were also included in the general conspiracy count. He urges that, therefore, the fine on the conspiracy count should be deemed sufficient punishment. On the other hand, the magnitude of the operation and the spirit in which the law was flouted in this case, must be considered. Moreover, the corporate defendant was a one-man corporation and was the *alter ego* of Michael Clemens, the master mind of the conspiracy. No innocent stockholders are involved. It does not appear that the interests of any unsuspecting creditors are affected.

The widow of Michael Clemens apparently inherited his interest in the corporation and thus in effect owns and controls it at this time. She is entitled to but scant consideration. She must have known of her husband's illegitimate activities, acquiesced in them, and evidently was perfectly willing to profit by them and live on their proceeds. After the Government rested and the court directed a judgment of acquittal as to her, she took the witness stand in behalf of the remaining defendants in an effort to exculpate them. The least that can be said about her testimony was that it impressed the court as being less than candid and as being replete with inaccuracies that were obviously calculated. Her story was that Clemens and Ivicola undertook to build a swimming pool on the farm, and that in effect she did not know how the enormous distillery came to be on the premises on which she was living. It is an interesting commentary that one of the minor defendants who escaped with a fine and who did some of the metal work in connection with the erection of the still, was blindfolded when he was brought to the farm in order that he might not be able to find his way there again. The verdict of the jury demonstrates that her story was not credited. It taxed the credulity of the court and evidently of the jury.

 In view of these considerations, the present application is lacking in merit. The motion is denied.